IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **SHAYLA WILLIAMS**, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 5:08-CV-335(HL) |
| **WILLIAM ENDERS, et al.**, | : | |
| Defendants. | : | |

**ORDER**

This case is before the Court on the Motion for Summary Judgment (Doc. 23) filed by Defendants City of Macon and William Enders, in his official capacity only. For the reasons discussed herein, the Motion is granted.

**I.   FACTS**

On December 19, 2007, Defendant William Enders ("Enders") was a detective with the Macon Police Department. After arresting her friend for writing bad checks, Enders came into contact with Plaintiff Shayla Williams at the Area 2 precinct. Enders told Plaintiff that her name, along with the names of her sister and mother, had been mentioned in connection with his investigation into the bad checks. He threatened Plaintiff that he had information on her and her family members, and that he could possibly arrest them all.

While at the precinct, Enders asked Plaintiff what she could do for him to persuade him not to arrest her, her sister, and her mother, and left her alone to think

about it. At some point, Enders returned to the room where Plaintiff was located, put his gun and badge on the desk, and told Plaintiff not to look at them, just to talk to him. He told Plaintiff that he was not on duty at that point, so anything she said to him would be off the record.

Enders then told Plaintiff that he needed her to convince him of why he should let her go. Plaintiff suggested cleaning Enders' house, and he laughed in response. He said no to that suggestion, but told her to keep going. Plaintiff then asked if Enders was talking about a date or sex. Enders responded that sex was good, but he was not looking for a one-night stand. Plaintiff asked if he meant having sex that night in the precinct, but Enders suggested following her to her apartment, which he did.

Upon arriving at her apartment, Plaintiff let Enders inside, may have lit several candles, went upstairs and took a shower, and came back downstairs to where Enders was waiting with nothing on but a towel. She took Enders upstairs, and they had sex. While Plaintiff contends that the sex was not consensual, Enders did not physically force himself on her and he did not hurt her.

Several days later, the City of Macon was made aware of Enders' alleged behavior. Enders was suspended and then terminated by the City for violating three rules of conduct:  abuse of process, immoral conduct, and unbecoming conduct.

Plaintiff alleges that her Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution, along with certain state constitutional rights, have been violated. She also contends that she was subjected to assault, battery, false

imprisonment, and negligent and intentional infliction of emotional distress. The basis for Plaintiff's claims against the City is that the City failed to adequately train, direct, supervise, screen, and control Enders.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986)

(internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B.     Official Capacity, State Law, and Punitive Damages Claims**

Plaintiff agrees that summary judgment is appropriate on the claims against Enders in his official capacity, the state law claims against the City, and the claim for punitive damages against the City. Accordingly, summary judgment is granted on those claims.

**C.     Failure to Train and Negligent Hiring Claims**

The real dispute is whether the City can be held liable for the actions of Enders. In order to hold a municipality liable under 42 U.S.C. § 1983, a plaintiff must show that a custom or policy of the municipality was the "moving force" behind the constitutional deprivation. Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690-94, 98 S.Ct. 2018, 2035-38 (1978)). A custom is a practice so settled and permanent that it takes on the force of law. Id. (citing Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36). A policy

is a decision that is officially adopted by the municipality. Id. (citing Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479-80 (11th Cir. 1991)).

At its core, this case involves bartering - a police officer agreed not to arrest Plaintiff and her family members if she did something for him, i.e., have sex with him. The facts are very similar to those found in Sewell, where the defendant police officer offered to let the plaintiff go on a drug charge if she consented to a strip search. He threatened to "ruin her life" with the charge unless she consented to the search, and indicated that he would accept any sexual advances made by her during the strip search. The plaintiff eventually undressed and lay naked on the floor, where she was molested by the officer. 117 F.3d at 489. The plaintiff alleged that the sexual molestation resulted from the municipality's failure to train or supervise.

The Eleventh Circuit rejected the contention that a custom or policy of the municipality was the moving force behind the constitutional violation. "Obviously, the Town has no policy commanding its officers to barter arrests for sexual favors. Likewise, the Town has no custom of allowing such behavior on the part of its officers." Id.

That was not the end of the inquiry, however. Municipal liability may also be based on a failure to train claim "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 489-90 (quoting City of Canton v. Harris, 489 U.S.

378, 389, 109 S.Ct. 1197, 1205 (1989)). The Eleventh Circuit relied on the Second Circuit case of <u>Walker v. City of New York</u>, 974 F.2d 293 (2d Cir. 1999), in addressing the deliberate indifference issue. The <u>Walker</u> court held:

> It is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens....*City of Canton* also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision. Where the proper response ... is obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise.

<u>Id.</u> at 490 (quoting <u>Walker</u>, 974 F.2d at 299-30).

Based on <u>Walker</u>, the Eleventh Circuit found that the municipality did not act or fail to act in such a way to constitute deliberate indifference, as the officer's proper response to the situation would have been obvious to all without training or supervision. <u>Id.</u>

While the Court is sympathetic to Plaintiff, the Court cannot find the City liable for Enders' actions. Enders threatened to arrest Plaintiff and her family members, and for all intents and purposes forced her to engage in sexual relations with him. Plaintiff testified that she did not want to have sex with Enders, but thought she had to do so. Enders' behavior was clearly improper. "Without notice to the contrary, the [City] was entitled to rely on the common sense of its employees not to engage in wicked and criminal conduct." <u>Floyd v. Waters</u>, 133 F.3d 786, 796 (11th Cir. 1998), *vacated*, 525 U.S. 802, 119 S.Ct. 33, *reinstated*, 171 F.3d 1264 (11th Cir. 1999).

6

Plaintiff contends that the City was on notice of improper conduct by its officers, but failed to respond properly by enacting rules of conduct specifically prohibiting the sort of assault as was committed against Plaintiff. This purported notice is based on City statistics showing that over a three-year period there were a total of 115 complaints made against officers for violations of the rules of conduct relating to courtesy/sexual harassment/racial discrimination, abuse of process, and unbecoming conduct. Unfortunately for Plaintiff, she has not presented evidence of prior constitutional violations involving officers forcing members of the public to engage in sexual relations. The one time an officer behaved in a manner similar to that of Enders, the officer was immediately terminated by the City. The Court certainly cannot assume that the 115 complaints pointed to by Plaintiff were in any way like the complaint against Enders. If the complaints were in fact similar to the complaint against Enders, it is Plaintiff's burden to provide that evidence to the Court.[1]

The impropriety of making such an assumption is underscored by the deposition testimony given in this case, along with the documentary evidence provided. For instance, during 2007, there were 22 external allegations[2] of a violation of the courtesy/sexual harassment/racial discrimination rule. That, however, could have been

---

[1] Plaintiff argues that she does not have evidence to support her claim because the City failed to provide it in discovery. However, Plaintiff never filed a motion to compel or in any way brought that problem to the Court's attention. The City will not be penalized for Plaintiff's failure to pursue her legal rights with regard to discovery.

[2] An external allegation is one made by a member of the general public.

22 courtesy complaints, or 22 sexual harassment complaints, or some combination of the three categories. The Court has not been provided with that information. Further, the Police Department's internal affairs report for 2007 clearly states that the vast majority of the courtesy/sexual harassment/racial discrimination complaints were for courtesy. Plaintiff cannot just refer to 115 complaints but give no further information about their substance or merit and expect the Court to give any weight to the complaints.

It is also clear to the Court that no training concerning the impropriety of the alleged conduct was necessary, as the proper response is obvious to all without training or supervision. *See* Sewell. There is no question that bartering arrests for sexual favors or forcing members of the public to engage in sexual intercourse is improper. The Court would only have to go beyond this "obvious to all" analysis if there was evidence of a "history of conduct rendering this assumption untenable." Walker, 974 F.2d at 300. If that was the case, the City may display deliberate indifference if it relied on the common sense of the members of the Police Department, rather than taking corrective measures. Id. Here, however, there is no history of inappropriate sexual contact between officers and members of the public.

Plaintiff also argues that there is a question of whether Enders should have ever been hired by the City. It is undisputed that Enders had previously been discharged from his employment with the Macon Police Department, and was on his second-go-round at the time of the assault against Plaintiff. Why he resigned the first time is not

clear. Enders contends it was because of a problem with his POST certification. The City believes it had to do with a falsification of his application, perhaps with regard to a prior arrest.

Under Georgia law, an employer "has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff." Munroe v. Universal Health Servs., Inc., 277 Ga. 861, 863, 596 S.E.2d 604, 606 (2004). With a negligent hiring claim, there must be evidence of "a causal connection between the employee's particular incompetency for the job and the injury sustained by the plaintiff." Id. While Enders may have lied on his first job application, that does not suggest a propensity for sexual assault, and it does not make it reasonably foreseeable that Enders would commit any kind of assault against Plaintiff. Since she does not have any evidence of a causal connection, Plaintiff's negligent hiring claim, to the extent she asserts one, cannot go to a jury.

### III.   CONCLUSION

The Motion for Summary Judgment (Doc. 23) filed by Defendants City of Macon and William Enders, in his official capacity only, is granted. The case against William Enders, individually, will be set for the next trial term in Macon.

**SO ORDERED**, this the 16th day of March, 2010.

        *s/  Hugh Lawson*
        **HUGH LAWSON, SENIOR JUDGE**

mbh